Appellant Andrew PLATT appearing pro se. Douglas Gerard appearing for appellee. All right. Mr. PLATT, do you wish to reserve any time for rebuttal? Yes, please. Five minutes. Five minutes? All right. Thank you. You may commence. May it please the court. Good morning. A friend of mine recently reminded me that in an awkward situation, sometimes if you just go ahead and call out the awkwardness, it helps dissipate it. I think we'd all prefer if I were out of sight behind an expert attorney. But that said, I don't think I should be asking you to think I'm a good guy. You know I think I'm a good guy, but I'm not here to litigate the case on appeal. I think I'd like to, even if the things that Woods Erickson would like to, even if that story were true, the bankruptcy court erred on legal issues. And so that's what I'd like to focus on on appeal. The three I'd like to focus on today are the surprise judgment on larceny, despite larceny not really being an issue at trial because of both 4007 and the court's own prior ruling, that that's grounds for reversal. Second, that the judgment seems to focus on the existence of a partnership duty, but the bankruptcy court didn't properly evaluate the elements of partnership under Nevada law. So that's grounds for reversal. And then third, that larceny isn't another word for conversion, that the court erred in evaluating the elements of larceny. Basically under this standard, no breach of a moonlighting agreement or a non-compete would ever be dischargeable under this type of analysis. And so there's not a lot in the judgment. The judgment isn't very lengthy in its findings of facts or conclusions of law. But to talk about that first issue of the procedural issue about why was it so important that Woods Erickson amend, that right at the last minute, why were they trying to add in the larceny argument? And so I'd emphasize that the original pleading for the complaint, trying to proceed under defalcation in a fiduciary capacity, was dead in the water because of Haller or Bernadelli, or even the short ruling that the court ended up citing, that under the standards in the Ninth Circuit, that even if I had been a partner, it would not have been the fiduciary capacity that the Ninth Circuit recognizes under A4. And so I quote in the briefs that counsel for Woods Erickson is saying, hey, this is essentially summary judgment for us. If you don't let us amend, I can't waste my client's time. And so the reason may not have been clear that that's because under Haller, under Short and under Bernadelli, that even if I had been a partner, that wouldn't have been an A4 grounds for denial of discharge. Mr. Platt, so what you're saying is that you think that we should rule, that the law is that if you were a partner, you didn't have a fiduciary duty that's sufficient to be the technical trust requirement that the Ninth Circuit has used as the basis for finding a breach of fiduciary duty under that provision of 523. Right. That's clear. And that's why counsel was saying, Your Honor, if you don't let us amend, I can't waste my client's money. So let me ask you that second question, which you just suggested, and that is why did they have to amend if they gave you the factual basis for the claim, whether it be embezzlement or larceny, as long as they told you what they believed you did that was incorrect, whether they use the magic words embezzlement or larceny, you would still be advised and still be on notice, wouldn't you? Under the underlying claim of the underlying claim under A4. Because they cited 523 A4. So there's, of course, two parts to that. And I actually agree that I have no authority to say that it's a gotcha, that if you don't use a magic word, that you've waived something. But here we have the rule that courts are not allowed to allow an amendment. And just the idea that they they talked about certain common elements that would be common under defalcation, under larceny and under embezzlement, but conspicuously draw. They didn't. There's no argument about there's no facts that give rise to either of the elements of the distinction with embezzlement or larceny. That's a proof question, right? That's not a pleading notice question. What I understood you to be arguing is it was not fair to me that, you know, that they did not call out larceny and then we tried a larceny case. And Judge Gann's question was, why does it matter? It's all over the complaint that this is what we know. Factually, this is what we're talking about. Now, you can argue that there weren't sufficient facts for larceny. But if you're arguing a due process point, please respond to Judge Gann's question. You're absolutely right. And the authority on this tends to talk both about the prejudice and the strength of Rule 4007. That they weave that together to say that, look, you can't on the eve of, you can't switch gears when you've gone through settlement conferences, when you've done all your pleading, when discovery is closed. And the whole focus has been on one theory that adding another theory, well, adding two new theories, right? They added embezzlement and tried to add larceny, both with contradictory and new elements that weren't part of discovery, that weren't part of the settlement discussion, that under both, you know, Keith currently. And Willems. But, Mr. Platt, the real issue on the amendment was not the larceny and embezzlement claim that you suggested were criminal conduct and couldn't be part of the claim. What they really were trying to amend to add was the A6 claim, which they hadn't previously suggested was that you purposely, woefully, maliciously did this act. That's what he denied at the motion to amend. And that was the main focus of what the argument was, not on the question of whether within A4, you had sufficient notice of what these other potential claims might be, since A4 was clearly at issue, right? If that were the case, I would agree, but there was extensive argument in the hearing and in the papers about whether or not the fact that they didn't mention the word larceny and that they had used the word conversion twice. That was a lot of what the argument was on that. So let me ask you. At the pretrial, before you had the trial, they submitted a pretrial which extensively discussed the issues of larceny and embezzlement. They went ahead and put evidence on a trial on the claim of larceny and embezzlement. Did the court ever make a ruling or ever make a decision on the record that said despite my prior decision with regard to these questions, I'm considering larceny and embezzlement or I'm going to allow the evidence to conform? I'm going to allow the judgment to conform to the evidence that was presented on these questions? So if I'm understanding the question, at the time that the court ruled on the motion to amend, there were also motions in limine to try to exclude all the evidence. I think the way he said it was that it would still be helpful for the issues that were before him. So we tried to have it excluded because it wasn't relevant. So I brought no witnesses to talk about the moonlighting policies and the fact that there was no ill intent there because it wasn't an issue. We came to talk about the fiduciary capacity and whether or not there had been a partnership agreement. But didn't this really come down to the argument that you were making was that you didn't believe anything you did was wrong and it was all approved either by Mr. Woods or it was an accepted policy that was operating and their position was it was wrongful from the very outset that you knew that what you were doing was taking money that belonged to the firm and taking it for yourself and that that wasn't permissible under any circumstances whether you were an employee or whether you were a partner. It was theft and that you shouldn't be allowed to do that. And so the witnesses – I mean I don't see where the – if they had said larceny, you would have changed your scope. Your scope all along was, hey, this was a permissible act. I didn't believe what I was doing was wrongful. But the court didn't evidently buy that argument when it rendered its decision. Am I missing something? So you're right that for all the bad acts that they were accusing me of were things that happened months and years later after this income had been earned. The bad acts, deleting files in the middle of the breakup of the firm, those were the things that they were trying to relate back and saying were wrongful. Whereas the idea that I would represent in non-legal capacity, help out shutting down a charter school, that renaissance piece, that was nothing to do with my firm. There was none of the wrong things related to that. Mr. Plott, can I ask you – you're into your five minutes. I'm going to just ask you a very direct question. Had the judge said in connection with their motion that affirmatively sought to add a claim of larceny, had he said yes, you can try larceny, would you have done something different? Absolutely. We would have brought witnesses to talk about the crazy idea that it was not okay to be doing other things on the side, outside the firm, whether it was an employee or partners. There were lots of examples of ways that it was routinely done. I helped other partners in their side business. I was expected of employees that we helped. There would have been testimony about that and we would have been far less dismissive of the idea that on the eve of trial, weeks before trial, that we would start going down a different path. Would you have done different discovery? Discovery was closed by the time they did this. You would have asked for it to be reopened? If possible. I wouldn't have known that that was an option. But yes. I'll reserve what's left. All right. Thank you very much. Mr. Girard? Thank you. Good morning, Chief Judge Taylor, Judges Lafferty and Gannon. May it please the court. After a six-day trial at which Mr. Platt had all the opportunity in the world to present any evidence that he wanted to present, the bankruptcy court correctly made several findings of fact and conclusions of law. All of the findings of fact were supported by substantial and in many cases overwhelming evidence. I'm going to stop you just a minute there. Substantial findings of fact and law. Where are those? Okay, good, because he didn't. I said that the findings that he made were supported by significant and substantial facts in the record that had been presented. And you would agree, however, that what he did is not exactly what an appellate court wants to see? Sure. I mean, I wish that he would have allowed me to prepare detailed findings of fact and conclusions of law. I offered. The judge turned it down and we got what we got. Right. So but certainly the findings that were made were very well supported by significant evidence in the record. And the high bar of the appellant to or of the appellee. I'm sorry to. I'm sorry, appellant. Get those terms confused to demonstrate that those findings constitute an expression simply has not been met. All of the conclusions of law were based upon clarity stated in controlling Nevada statutes and case law on the substantive issues and on Ninth Circuit controlling law on the bankruptcy and procedural issues. And where is the where is the funding? It's not clear. I'll be honest. It's not clear to me. We found on discharge ability. It's not clear to me whether he found it under larceny or breach of fiduciary duty. Well, he found it under both. Look at the court's actual judgment. He starts out in the first paragraph, which is this is obviously the first few pages of the record. His first paragraph of findings deals with him determining that there was a conversion and that that conversion constitutes larceny for purposes of federal law under 523 A4. Let me ask you. Let me ask you then. How do you how do you how do you get there when he made a prior decision when you move to amend and specifically said, no, I won't allow larceny. Did he change his mind? Is there a place where we can look that we can definitely change his mind? I mean, if you look at the record from the hearing on the motion to to to amend, which your honor correctly noted, was really about adding an A6 claim. It really was not about us adding for clarification that we were going to call the conversion of larceny. We're going to call it an embezzlement. That's just to be fair. That was you pivoted. You wanted conversion. You wanted that A6. And when he said affirmatively, no. Then you said, well, don't we at least get larceny? Well, I don't. He said no. I don't think pivoting is the right characterization. What what we had what we have is a clear A4 claim. And that A4 claim is clearly based upon conversion. I mean, you cannot read that complaint and not understand. It doesn't happen. I mean, conversion isn't. I mean, the three things in a four are embezzlement, larceny and breach of judicial duty, which may which may be through a conversion. But larceny is different. Well, but what we said separately encapsulated. I mean, I'm not saying I'm not saying I agree with what he did. I'm just saying I don't think you could say he did not unambiguously say that there wasn't larceny because you you ask him or maybe not you. Somebody at that hearing said and he said, no, it was me. But if you look at the record and specifically at page three, 87, this is from that hearing. What the judge said was that he didn't think embezzlement and larceny could be the same as conversion. And that's what he changed his mind about. Remember, he asked at the end of the hearing for a written order to be prepared by Mr. Platt's counsel. And they prepared nothing. They submitted nothing. And the court entered no order of any kind. There is no order. And. Obviously, under very clear Ninth Circuit authority, that's an interlocutory order, which the court had the discretion to change at any time up until the judgment was entered. But doesn't he have to tell the other side he's changing his mind? Well, you can. I'm sorry, but I, you know. Obviously, I'm troubled by this. And I think any any thinking person would be that, you know, you go into a hearing saying, I'm absolutely not going to do this. And at the end of the hearing, you say, surprise, I did. So we're in the record. Can you help us showing us that there was any kind of. I don't want to move to breach of fiduciary duty because I said it's under both. That's good. Sure. I think it's a straightforward. It's a straightforward answer, Your Honor. The judge did not had not. It had never been briefed whether or not this a four claim that we'd already alleged constituted larceny or embezzlement. It had never been raised in the motion to amend. We just said we're going to one of the things we're going to add is a label. That's it. It had never been. And so when when we went to the subsequent hearings on motions in Lemony and the subsequent beginning of the trial, we made it clear to the court in both of those that we intended to proceed based upon the conversion, not only constituting a defalcation for purposes of of the first part of 523 A4, but also that it constituted an embezzlement or a larceny. Is he incorrect? Is he incorrect when he says that in the motions to Lemony motions in Lemony related to that? The judge said, I think it's I still need it for other stuff. So I'm going to let it come in for that purpose. That's he is incorrect. That's not what the judge said. But the motions in Lemony were heard. And we again pointed out what we were planning to do at the trial. And the judge didn't say, no, you can't do that. And then we went to the trial, and I pointed out in our brief that our opening argument in the trial was all about, we raised the fact that conversion under the Ormsby decision can constitute a larceny under federal law. And Ormsby is even based upon a Nevada conversion. And we pointed that out to the court. And the court, you know, they didn't jump up and object and say, you can't go forward on that because the judges has made a decision that you can't proceed on larceny. That didn't happen. The judge didn't shut us down and say, hey, I've already decided we're not going to proceed on that. And the idea that they're prejudiced by this is absolutely ridiculous. Isn't it a bit of a problem? And I think I'm just going further to Judge Taylor's point that you're explaining to us and maybe there's nobody better than Judge Beasley what you think Judge Beasley was doing. But Judge Beasley didn't explain that. So for example, I mean, you might have solved this by moving to conform, right? Because then Judge Beasley would have said, you know, yeah, that's what I did. And here's why I did it. But we don't have that, right? We do not have that. And I fully agree with you, Judge Lafferty, that he never explained that. But again, there was never this written order that he said he was going to enter on this issue. It just doesn't exist. He did say, he clearly said, I don't think the conversion, you know, it's right on page 387. I think embezzlement of larceny are not the same of conversion, which is why he said originally he didn't think that we could go forward on that. But when we briefed it in subsequent motions and explained to the judge the Ormsby decision, he changed his mind. Now, did he say, you know, hey, you can go forward now on larceny where before I said maybe you couldn't? He never said that. But again, he also said that there would be a written order and there never was one. And he also said at the beginning of the trial that that's what we were going to go forward on. Can I take you to breach of fiduciary duty because, you know, I think you can tell we're troubled by the record and we're troubled by what the judge did. On breach of fiduciary duty, however, you're saying you think he also decided it on that basis? Well, it says it right on the border, sure. Right. And he clearly made a finding of partnership. Correct. And how do we the one piece that's missing from his findings, perhaps, or that you have to get through to through indirection is a state of mind finding required by the Supreme Court bullet decision. How do we find that he made the requisite fine factual finding regarding intent? Is it a conflation of the larceny determination? Well, it's if there's remember, we have to we have to look at this in two different scenarios. Right. First, as it relates to the defalcation, the defalcation under the Supreme Court standard that you just mentioned only requires that there be a showing that that's what was that that's what he intended to do. And you read that in conjunction with the Ormsby decision, which is the controlling Ninth Circuit law. And in Ormsby, the Ninth Circuit said, look, you can determine that felonious intent through the we use the find the exact words. Ormsby said intent may be properly inferred from the totality of the circumstances and the conduct of the person accused. And so even if he couldn't correctly find larceny when he found a knowing taking of assets, that would have been sufficient for the Bullock state of mind, in your view. Of course, because under Bullock, it says defalcation only requires an intentional act, which the fiduciary either knows is improper or is in reckless disregard, willful blindness of the law. And Mr. Platt admitted on the record that he was fully aware of the statutes NRS 87.090 and NRS 87.4325, which requires an act that is not in the ordinary course of the partnerships business to be approved by all partners. So, Mr. George, Mr. George, the issue that I struggle with is how do we get to the partnership? I understood that he found it, but there's you had a written partnership agreement. The partnership agreement suggested that everyone who signs the agreement is a partner. He didn't sign the agreement. You never produce a signed copy of the agreement in terms of the evidence. So how could the judge reach the conclusion? Is it based upon the fact that everybody said they were partners, that there were representations in writing outside of the agreement? I mean, how do we overcome that particular piece of evidence in that requirement? Well, I think the analysis starts with NRS 87.070, which clearly says that the receipt of a person of a share of profits of a business is prima facie evidence that the person is a partner in the business. That's where I struggle, though, is why that statute is applicable in one of those kinds of statutes are only applied when there's no agreement at issue. And the question is whether the people are acting pursuant to an agreement that the statutes would apply to versus when you have a partnership agreement that says this is what will govern our relationship. How do we get to use the statutes when you have a partnership? How do you get there? Well, it's a fair question, but let's start with the assumption underlying 87.070. It doesn't say it only applies in the absence of a written partnership agreement. It doesn't say that. So we start by the fact that he was receiving a share of firm profits. His compensation went up by $75,000 the first year that he became a partner over what his W2 compensation was as an employee. And then it doubled the next year. So, you know, he earned over $200,000 in firm profits that he would not have received otherwise. And then all of the conduct and I set forth in the brief a very detailed step-by-step showing of all of the things that demonstrated that he had met all those requirements that were in the written partnership agreement that he himself had drafted. And, you know, he held himself out as a partner. He signed documents as a partner. He received access to the company's bank accounts as a partner. He represented himself on his tax returns as a partner. He started receiving a K1 instead of a W2. He also in his dealings with firm clients represented himself as a partner. And obviously he was paid as a partner. So all of the things that would have happened if he had signed a document saying he was a partner happened. In other words, the conduct of the parties demonstrated that he was a partner. And that evidence was really overwhelmingly provided to the bankruptcy court. And that's why he made that factual finding that Mr. Platt was a partner. And there's been nothing to refute that as an abuse of discretion. Can I ask you another question? Judge Gamm, was that a complete answer to yours? It was. I appreciate it. Thank you. Okay. Thank you. And we may end up giving you a little more time and we would obviously give Mr. Platt a little more time. There's two orders that befuddle me or two decisions that befuddle me in this. One is the one on your motion to amend. The other is one early on on the motion to consolidate. He appears to have fully liquidated the non-dischargeable claim in this action. So would you agree that your state court action is moot as to Mr. Platt? Almost. There are a few things that he did not rule on. For instance, we also asked for punitive damages and he did not rule on that. He only ruled on the portion of the claim that was related to the actual. Doesn't that mean he didn't grant them? I mean, I mean, you know, I think I mean, I think that's a fair, you know, when I said I'm befuddled. Let me underscore that with exclamation points. But it looks to me like what he did was he gave you a judgment for a non-dischargeable claim that includes not a dime of punitive damages. You asked for him. Are we done? No, because because the judge said that the rest of that claim was being remanded back to state court. In other words, he said, here are the actual amounts that he took in conversion. And he said, I'm not ruling on the remainder of your claim that was in the original state. Where is that? Where is that said with that clarity? Oh, it's it's right. Well, if you look at the record where he announced his decision and I don't have that reference. But if you look at that, he clearly says, I'm making this ruling and everything else. I'm remanding back to the state court. But is he saying that he's found what's not just a different way? He found what was non-dischargeable. So fine. You get punitive damages. Are they dischargeable? I don't think I think we can file a motion to bring that back to the bankruptcy court and say this is the rest of the claim on the conversion. Why is that? I'm sorry. Then why is this a final judgment? It's a final judgment on all of the claims on the conversion claim that was originally asserted. I mean, let me just pause here and say, I don't think you created any of this. I don't. I understand. But what you just said to me raises an issue of finality, which is if there's another piece of non-dischargeability. The vehicle for getting a non-dischargeable judgment is not the other litigation. It is this litigation in which you have come to us saying you have a final judgment. And you know, so. I think it'd be a violation of the discharge potentially to go to court and try and pursue that. And if that makes you unhappy, then you might want us to remand it and clean some things up. I don't think that that's the appropriate approach, because obviously we can always file a motion to amend a judgment. That's the law. Clarity permits that. That doesn't mean that the judgment's not final when it's first entered. You know, rule 60 exists for a reason, you know, so that to the extent that that we say. Let me stop you and just say this has surprised me and I'm obviously surprising you. And so let's save your, keep your powder dry on that. If we're going down that road, we may ask for additional briefing on that point. Because I was confused about what that meant. I didn't expect an argument that the judge had decided that the non-dischargeable, the determination of non-dischargeability would in effect be bifurcated. And so I need to read what he said, and it may be that I'm fine with it. My fellow panelists may tell me they're fine with it. And so I'm not going to make you continue to argue a point that none of us have thought through before today. And was it raised in the brief? No, no. Well, it's the sort of thing we have to raise because it creates a jurisdictional issue for us. So let us think about it. All right. I have given you an additional three minutes and 48, 49 seconds, three minutes. Let's call it three minutes and 40. So we're going to go back to Mr. Platt and we will augment his time roughly. What did he have left? So you've got about six minutes, Mr. Platt. Thank you. I'd love to go to a point you raised about the judgment and the work that in race short is doing in the judgment as it's interpreting the, you know, some standard about partnership obligations. And I think it's really important that short is actually fully consistent with Holler and these other decisions that say that the statutory language that the court, you know, is saying is identical in short and in Nevada is actually not enough. It's that the next part where the court in short is saying that not even just general partners, but a managing partner takes on this fiduciary capacity that is the type of federal fiduciary capacity that the bankruptcy code is looking at. And so just saying that, that this, you know, that if I had been a partner, I would have had a duty to turn over the profits. It's actually, it's actually a misinterpretation of short. Well, I'm going to go back to Redstone versus Haller, which was decided under California law, but it relied on a California statute that it said that wasn't enough. And then it relied on California decisional law that said partners are fiduciaries for each other. And it used, I personally think it used the wrong term, but I think what we're really talking about, it said that the combination of those two did not result in a trust ex maleficio or resulting trust. I think it created a technical trust. And Nevada appears to have read that law because they have two statutes, do they not, that put together say exactly what the court in Ragsdale found to be a trust that supported non-dischargeability. That's not the way I read it. We're seeing it even in short where that this same language from the uniform code is, that predates those decisions that is the reason why they have to go to decisional law. And in order to get that, because this is part of the Uniform Partnership Act, and it's in all three states, it was there. And so the courts are always having to go add more to it. And so this is, you know, ex maleficio is exactly what this statute is, because it's saying that the duty doesn't exist until this point, right? It's not a general duty to, you know, before that alleged wrongdoing occurs. So that's definitionally what, you know, Bernadette is- So you're saying, you're trying to argue that this is merely a trust ex maleficio or resulting trust? Clearly. Yeah, I think this is exactly what even short is saying. Even short is saying that it would have been, and so it adds on except for there's these decisions. And in short, there was a, it was a situation where it wasn't just a general partner. It was a managing partner who had these extra duty, had this extra fiduciary capacity with regards to his partners. All right. I read NRS 87.4336 is saying a partner has an obligation to account to the partnership and hold his trustee for it, any property, etc. Appears to be a direct, directly related to the language in Ragsdale. Okay, I hear you. So yes, this is a different partnership act. So this is the 1997 act, which didn't apply to Woods Erickson. And so there's four, Nevada has four different partnership acts right now. And so this is a different one. And even if it had been under that act, partners, the partnerships don't, they're allowed to modify duties. And so it's, so even if that were a general, even if that were manifesting some general intent by the Nevada legislature, they didn't take any steps to make it apply to the other. What partnership act do you argue it was decided under? If that isn't, if you're saying that's not applicable. Well, we're under the, it's just called the Uniform Partnership Act, it's 87010. And then, and the following provisions. And so then the 97 act kicks in, in NRS 87, but not until NRS 874321. And so I would, but I think that, I don't think this is a controversial point. I think this is exactly why they had to abandon the defalcation in a fiduciary capacity argument, because they know that Washington may have modified that, California may have modified the duties of partners. But Nevada is, that's one of our reasons why Woods Erickson existed, was because of the favorable Nevada laws for business organizations. That's what we did, is we helped businesses navigate those rules because of Nevada's favorable rules protecting partners and managers and LLCs. All right. Going off on a tangent, but what I should. And you're, I think out of time. So this has obviously been interesting. And we will be spending a significant amount of time. I'm going to, we will let you know when it's under submission. I do want to look at that one issue, and we will, if we need additional briefing, we'll ask for it. But we will endeavor to quickly come to a decision that gets it under submission or ask you for briefing. And thank you for your good arguments. Thank you for your patience. Thank you. All right. We will be in recess.
judges: TAYLOR, LAFFERTY, GAN